# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.B. & D.M. ENTERTAINMENT, INC.; and 4805 CONVOY, INC.,<br><br>                              Plaintiffs,<br><br>   vs.<br><br>MICHAEL GALARDI; MDG, INC., a Nevada corporation, dba CHEETAH CLUB; and DOES 1-100, inclusive,<br><br>                              Defendants. | CASE NO. 03CV2112<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART WITHOUT PREJUDICE** |

Presently before the Court are Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. No. 50], Plaintiffs' Opposition [Doc. No. 54], and Defendants' Reply [Doc. No. 57.] For the following reasons this Court **DISMISSES** without prejudice Plaintiffs' first claim in its entirety and second claim, in part.

## BACKGROUND

Plaintiffs and Defendants are both engaged in the night club business. [Pls.' Second Amended Complaint ("SAC") ¶ 13.] Their night clubs offer adult-oriented entertainment, including exotic dance entertainers that perform on and off stage. [Id.] On November 30, 2000, the City of San Diego passed an ordinance prohibiting adult entertainers to touch, or be touched by, patrons ("touching ban"). [Id. ¶ 25.] Plaintiffs allege that Defendants did not follow this

touching ban in its clubs and that they bribed policemen to obtain advance information of police inspections.[1] [Id. ¶ 31.] Consequently, Plaintiffs contend that Defendants did not suffer the decrease in patronage and lost revenue suffered by Plaintiffs as a result of the touching ban. [Id. ¶ 46.] Therefore, in seeking relief, in part, for lost revenue and lost "economic advantages," Plaintiffs assert claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et. seq., and the California's Unfair Competition Law (California Business & Professions Code § 17200 or "UCL").[2] [Id. at 1, ¶¶ 29, 84.] Defendants are now moving to dismiss Plaintiffs' second amended complaint.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides the vehicle by which a defendant may attack a complaint that fails to allege facts sufficient to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations of material fact are accepted as true and are construed in the light most favorable to plaintiff. Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994). However, the court need not accept as true allegations that contradict facts which may be judicially noticed by the court. Mullis v. United States Bank. Ct., 828 F.2d 1385 (9th Cir. 1987).

"Dismissal [for failure to state a claim] can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Although the allegations of a complaint must be taken as true for purposes of a decision on the pleadings, dismissal is proper if the complaint is vague, conclusory, and fails to set forth any material facts in support of the allegation. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 583 (9th Cir. 1983). Finally, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels

---

[1] On September 7, 2003, Defendant Michael Galardi agreed to plead guilty to various federal crimes and admitted that he "conspired with others to pay money to a San Diego Police Officer working in an undercover capacity in order to corruptly influence him in the performance of his official duties, specifically, to obtain advance information of police department vice raids at Cheetah's." [SAC ¶ 47.]

[2] Plaintiffs are also raising other state claims that will not be addressed in this order.

and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . " Bell Atl. Corp. v. Twombly, __U.S.__, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted).

## ANALYSIS

**A.     Plaintiffs' RICO Claim**

The RICO Act prohibits certain conduct involving a "pattern of racketeering activity," and makes a private right of action available to "[a]ny person injured in his business or property by reason of a violation" of RICO's substantive restrictions, provided that the alleged violation was the proximate cause of the injury. Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 268 (1992).[3]

Plaintiffs allege that Defendants' bribes, in conjunction with their use of the mail, telephone, and interstate travel, constituted a pattern of racketeering activity under RICO that caused them harm.[4] [Pls.' Opp. at 6.] Defendants argue that Plaintiffs' claims should be dismissed due to an absence of causation and this Court agrees. [Defs.' Motion at 1-5.]

**1.      Background Law**

In a related case, Anza v. Ideal Steel Supply Corp., __ U.S. __, 126 S. Ct. 1991 (2006), a corporate plaintiff brought an action against a business competitor for engaging in an unlawful racketeering scheme aimed at gaining sales and market share at its expense. The plaintiff alleged that the defendant's racketeering activity included: (1) failing to charge customers New York sales taxes, and (2) fraudulently concealing that practice from the state by mailing and electronically sending false tax returns. Id. at 1994. The plaintiff asserted that this practice allowed defendant to reduce its prices and attract more customers without affecting its profit margin. Id. The plaintiff

---

[3] Plaintiffs seek relief under Section 1962 of the RICO Act but they do not specify which subsection of the statute. [SAC ¶ 79.] From the moving papers, it appears that they seek relief under Section 1962(c), which makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

[4] Specifically, these "predicate" RICO acts are Bribery, Wire Fraud, Mail Fraud, and violations of the Travel Act and California's Penal Code. [SAC ¶ 71.]

stated that this led to its loss of "significant business and market share." Id. at 1995. The failure to collect New York sales tax was not a predicate RICO act. Therefore, the plaintiff raised mail and wire fraud as the predicate RICO acts. Id.

The Supreme Court approved of the district court's dismissal of the RICO claim. In its discussion, the Court noted that the "compensable injury flowing from a violation of [§ 1962(c)], necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." Id. at 1996 (citations and internal quotations omitted). The Court found that the victim of the RICO predicate acts (mail and wire fraud) was the State of New York–not plaintiff–because the state was the one actually being defrauded. Id. at 1997. It stated that the cause of plaintiff's alleged harms "is a set of actions (offering lower prices) entirely distinct from the alleged RICO violations (defrauding the State)." Id. As a result, the Court explained that there was an "attenuation between the plaintiff's harms and the claimed RICO violation," and concluded that there was an "absence of causation" warranting dismissal. Id.

The Court further discussed that the absence of proximate causation was "confirmed" by the speculative nature of the claim. Id. "The less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors." Id. (citations and internal quotations omitted). The Court suggested that: (1) defendant could have lowered its prices for reasons unconnected to the fraud; (2) plaintiff could have lost business due to poor business practices; and (3) that it "would require a complex assessment to establish what portion of [plaintiff's] lost sales was the product of [defendant's] decreased prices. Id.

> Further illustrating this point is the speculative nature of the proceedings that would follow if [plaintiff] were permitted to maintain its claim. A court considering the claim would need to begin by calculating the portion of [plaintiff's] price drop attributable to the alleged pattern of racketeering activity. It next would have to calculate the portion of [plaintiff's] lost sales attributable to the relevant part of the price drop. The element of proximate causation recognized in Holmes is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. It has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws.

Id. at 1997-98.

### 2. Application to Present Action

This Court finds that Anza warrants a dismissal of Plaintiffs' RICO claim.  Here, Plaintiffs' alleged harm is a set of actions (offering better services) "entirely distinct" from the alleged RICO violations (defrauding San Diego and violating its laws).  Thus, as in Anza, the connection between Plaintiffs' alleged harm and the RICO violations is attenuated.

Furthermore, in the present action, Plaintiffs argue that Defendants' predicate acts (bribery, mail fraud, and wire fraud) were the proximate cause of their damages because they concealed and facilitated Defendants' non-predicate act (failure to enforce the San Diego touching ban), which ultimately caused them harm.  Similarly, in Anza, the plaintiff alleged that Defendants' predicate acts (mail and wire fraud) facilitated non-predicate violations (failing to collect New York sales tax), and the Supreme Court denied relief due to an absence of causation.

Plaintiffs do not provide any relevant authority permitting a civil RICO action where predicate acts concealed non-predicate violations.  Plaintiffs do cite to Williams v. Mohawk Industries, Inc., 465 F.3d 1277 (11th Cir. 2006) and Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir. 2002).  In both cases, the courts found that the plaintiffs' RICO causation allegations were sufficient at the motion to dismiss stage, but both are distinguishable.  Williams, 465 F.3d at 1291.

In those cases, the plaintiffs alleged that their wages were diminished after their employer hired illegal aliens at a lower salary.  Id.  The plaintiffs did not allege damages were caused by a non-predicate act that was facilitated or concealed by a predicate act.  Instead, the theory was that the RICO predicate act itself– illegal hiring in violation of the Immigration and Nationality Act–proximately caused the depression of the workers' salaries.  See Mendoza, 301 F.3d at 1170 ("[T]he fact that RICO specifically provides that illegal hiring is a predicate offense indicates that Congress contemplated the enforcement of the immigration laws through lawsuits like this one [].").

Additionally, in parallel to Anza, the speculative nature of Plaintiffs' claim "confirms" the absence of proximate causation.  If this Court were to entertain Plaintiffs' RICO claim, it could

later be forced to make "intricate and uncertain inquiries" regarding Plaintiffs' lost revenue and Defendants' increase in revenue. As the <u>Anza</u> Court acknowledged, "[b]usinesses lose and gain customers for many reasons," and it would require a "complex assessment" to establish: (1) how instrumental Defendants' bribes were in maintaining the non-enforcement of the touching ban; (2) the portion of Defendants' increase in sales due to the non-enforcement of the touching ban; and (3) the portion of Plaintiffs' lost sales that were attributed to Defendants' non-enforcement. <u>Anza</u>, 126 S. Ct. at 1997. Put simply, the connection is attenuated.

Finally, just as the real victim in <u>Anza</u> was the state of New York, here, it was the City of San Diego, and it is free to pursue appropriate remedies. <u>See</u> <u>Krontz v. City of San Diego</u>, 136 Cal. App. 4th 1126, 1131 (2006) (noting that the City of San Diego suspended a company's nude entertainment permit for violations of the touching ban). Therefore, Plaintiffs' first claim for relief is **DISMISSED** without prejudice.

### B.  Plaintiffs' UCL Claim

Defendants contend that Plaintiffs have not suffered an injury that would entitle them to relief under the UCL. Plaintiffs counter that their loss of revenue is an injury entitling them to injunctive and monetary relief. For the following reasons, this Court finds that Defendants fail to state a claim for any form of money damages under the UCL.

"While the scope of conduct covered by the UCL is broad, its remedies are limited." <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1144 (2003). Prevailing plaintiffs are generally limited to injunctive relief and restitution. <u>Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 179 (1999). "Plaintiffs may not receive damages, much less treble damages, or attorney fees." <u>Id.</u>; <u>see also</u> <u>Korea Supply</u>, 29 Cal. 4th at 1150 (stating "it is well established that [plaintiffs] may not recover damages" under § 17200). Restitution under § 17200 consists of returning money "to those persons in interest from whom the property was taken." <u>Kraus v. Trinity Management Servs.</u>, 23 Cal. 4th 116, 127 (2000); <u>see also</u> <u>Cortez v. Purolator Air Filtration Prods. Co.</u>, 23 Cal. 4th 163, 177 (2000) (restitution award is for "money that had once been in the possession of the person to whom it [is] to be restored").

The Supreme Court of California illustrated these principles in <u>Korea Supply v. Lockheed Martin</u>. There, plaintiff sued defendant under the UCL for bribery of Korean officials that allegedly caused plaintiff lost defense contract opportunities. <u>Korea Supply</u>, 29 Cal. 4th at 1142. The court found that plaintiffs failed to state a cause of action under the UCL and reasoned: "Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants directly took from plaintiff." <u>Id.</u> at 1149. The court also added that plaintiff had no vested interest in the money, but instead had an "attenuated expectancy" that did not warrant relief under the UCL. <u>Id.</u> at 1150. Therefore, the court concluded that plaintiff's claim was more "properly characterized as a claim for non-restitutionary disgorgement of profits," which was not an available remedy under the UCL. <u>Id.</u> at 1150-52.

In this case, Plaintiffs invoke the UCL in arguing for an injunction, restitutionary damages, and attorney's fees. [SAC ¶¶ 70-90.] They contend the UCL claim arises from Defendants' various violations, including bribery of San Diego employees, non-enforcement of the touching ban, and failing to comply with several state and federal tax and labor statutes. [<u>Id.</u> ¶¶ 86, 89.] For example, Plaintiffs allege that Defendants are not paying workmen's compensation to their employees, and that as a result, Plaintiffs have lost revenue and "economic advantages." [<u>Id.</u> at ¶¶ 84, 89.] Plaintiffs are essentially alleging that they were placed at a competitive disadvantage when Defendants were following these various statutes and Plaintiffs were not.

However, as discussed, the UCL does not provide for restitution or any type of monetary damages for this alleged harm. As stated, under the UCL, damages and attorney's fees are unavailable and "restitution" is for "money that had once been in the possession of the person to whom it [is] to be restored." <u>Cortez</u>, 23 Cal. 4th at 177. In seeking lost revenue, Plaintiffs are asking for property that was never in their possession. At most, they had an "attenuated expectancy," for which the UCL cannot provide relief. Therefore, Plaintiffs' claims for restitution, attorneys' fees, and general monetary damages are **DISMISSED** without prejudice.

At this time, the Court will not address Plaintiffs' claim for injunctive relief under the UCL or the other state claims. In their reply brief, Defendants requested an opportunity to file an additional motion to dismiss for lack of supplemental jurisdiction over the state claims in the event

that the RICO claim was dismissed. [Pls.' Reply at 9-10.] The Court has dismissed the RICO claim in its entirety and will entertain this new motion.

The Court **GRANTS** Defendants 30 days from the date of this order to file the additional motion to dismiss. If this new motion is not filed within 30 days, the Court will rule on the outstanding state claims with the papers currently before it.[5]

## CONCLUSION

For the foregoing reasons, this Court **DISMISSES** without prejudice Plaintiffs' first claim in its entirety and second claim, in part. Additionally, the Court **GRANTS** Defendants 30 days from the date of this order to file an additional motion to dismiss.[6]

DATED: November 28, 2007

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge

---

[5] Plaintiffs' claim for injunctive relief may also be barred under the primary jurisdiction doctrine. Defendants may also discuss this doctrine, if necessary, in its new motion.

[6] Plaintiffs' objections to the affidavit of John Barriage are **DENIED** as moot because they did not affect this Court's ruling on the motion.